IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Ethan Peloe, | : | |
| | : | Case No. 1:14-cv-404 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Defendants' Motion to |
| University of Cincinnati, *et al.*, | : | Dismiss and Motion to Strike and |
| | : | Denying Plaintiff's Motions for Leave |
| Defendants. | : | |
| | : | |

Plaintiff Ethan Peloe filed this suit against Defendants University of Cincinnati and Daniel Cummins alleging that they denied him due process in disciplinary proceedings taken against him on charges of sexual misconduct.  Pending before the Court are Defendants' Motion to Dismiss (Doc. 9), Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 16), Defendants' Motion to Strike the Affidavit of Paul Moke (Doc. 27), and Plaintiff's Motion for Leave to File Supplemental Memorandum in Opposition to Motion to Dismiss (Doc. 46).

For the reasons that follow, the Court will **GRANT** Defendants' Motions and **DENY** Plaintiff's Motions.

## I.      BACKGROUND

The background facts are primarily taken from the well-pleaded allegations stated in the Amended Complaint (Doc. 3).

### A.      The Parties and the University Code of Conduct

Ethan Peloe is a student at Defendant University of Cincinnati ("UC" or "the University"), a public university in Ohio.  (Doc. 3 at PageID 109.)  Defendant Daniel Cummins is the Assistant Dean of Students and the Director of the Office of University Judicial Affairs ("Judicial Affairs Office") for the University.  Peloe is suing Cummins in his personal and

official capacities. (*Id.*) Defendants Jane Doe #1 and Jane Doe #2 are students at the University. Peloe is not asserting claims against Jane Doe #1 or Jane Doe #2, but has named them as defendants because they may have an interest in this matter. (*Id.* at PageID 110.)

The University has a Student Code of Conduct (Doc. 9-1), which is set forth in the Ohio Revised Code § 3361:40-5-05. The Code of Conduct at subsections (C)(4) and (D) sets forth disciplinary procedures for when a student is charged with nonacademic misconduct. (Doc. 9-1 at PageID 171, 184.) Incidents of nonacademic misconduct are to be reported to the Judicial Affairs Office. (*Id.* at PageID 151, 164.) There are four levels of procedures if the University intends to impose discipline against the student for the misconduct.

First, after a complaint is filed against a student with the Judicial Affairs Office, the student receives written notice of the allegations, the rights to a procedural review, and the possible sanctions. (*Id.* at PageID 171–72.) The student can admit responsibility or deny responsibility and request a hearing before an administrative review committee ("ARC") panel. (*Id.* at PageID 172.) An ARC panel consists of a hearing chair, two faculty or staff members, and four undergraduate student representatives. (*Id.* at PageID 173.) ARC hearing procedures allow for witness testimony and notarized statements. (*Id.* at PageID 175.) The accused student and the complainant can submit evidence and written questions to be asked of the adverse witnesses. The hearing chair determines which written questions will be asked. (*Id.* at PageID 176.) Both sides can present closing statements. (*Id.*) The ARC panel then makes a recommendation to the dean of students within three days of the hearing. (*Id.*)

The ARC panel's recommendation is not final. In step two, the dean of students can concur in the decision, modify the sanction, or send the issue back to the ARC panel for further review and recommendation. (*Id.* at PageID 177.) The dean of students provides written notice

of his or her decision to the parties within three days of receipt of the ARC panel's recommendation.  (*Id.* at PageID 176–77.)  The accused student then has five days to appeal the sanction, if any.  (*Id.* at PageID 177, 182.)  The sanction takes effect only if the student does not timely appeal the decision of the dean of students.  (*Id.* at PageID 177.)

Step three is the appeal of the dean of student's decision to the appeals administrator. There are three permissible grounds for appeal: (1) new information is discovered; (2) "[a] substantial procedural error occurred in the process, which affected the decision in the case;" or (3) the sanctions imposed were not commensurate with the violation.  (*Id.* at PageID 183.)  If the appeals administrator determines that new information is available or that substantial procedural error occurred, the appeals administrator can remand the decision to the ARC panel to consider the new information or to correct the procedural error.  (*Id.*)  The appeals administrator will again review the ARC panel recommendation after a remand.  (*Id.* at PageID 184.)  If the procedural error has been corrected, the appeals administrator will forward the recommendation to the appropriate dean.

In step four, the appropriate dean or vice president shall "accept, reject or modify the recommended sanction and notify all parties in writing of the final decision."  (*Id.* at PageID 185.)  The vice president for student affairs and services makes the final decision for nonacademic misconduct sanctions of dismissal.  Importantly, during an appeal of the recommendation "[t]he student can continue in his/her courses without prejudice or interruption until the appeal is final."  (*Id.* at PageID 185.)

**B.      Charges and Disciplinary Proceedings against Peloe**

Peloe was accused of raping Jane Doe #1 and Jane Doe #2 on or about March 9, 2014. (Doc. 3 at PageID 112.)  Peloe has denied the accusations of rape.  (*Id.* at PageID 113.)  Jane

Doe #1 and Jane Doe #2 undertook rape kit testing following the alleged rapes.  (*Id.* at PageID 114.)  The results of the rape kits tests have not been made available to Peloe.  (*Id.*)  The accusations against Peloe were presented to a grand jury in Hamilton County, Ohio, but the grand jury declined to issue an indictment.  (*Id.* at PageID 113.)  The accusations also were investigated by the UC Police.  (*Id.*)

The University proceeded with disciplinary charges against Peloe for a violation of the University's Student Code of Conduct.  Cummins sent an initial letter to Peloe on March 12, 2014 describing the allegations, and then Cummins met with Peloe on March 28, 2014.  (Doc. 3 at PageID 115; Doc. 16-1 at PageID 376.)  Pursuant to the Code of Conduct, Cummins scheduled an ARC panel to review the charges against Peloe and determine whether discipline was appropriate.  (Doc. 3 at PageID 115.)  The ARC hearing was originally set for April 10, 2014, but it was postponed until May 2, 2014.  (*Id.* at PageID 116.)  Cummins interviewed witnesses on April 10, 11, and 14, 2014 in preparation for the hearing.  (*Id.* at PageID 115.)

Peloe alleges that his due process rights were violated during the ARC hearing in multiple ways, only some of which will be listed here.  Cummins did not permit Peloe to record the ARC hearing.  Peloe was not permitted to present any evidence at the hearing other than his statement.  He sought without success to present surveillance video of himself, Jane Doe #1, and Jane Doe #2 entering the girls' dormitory together on the night of the incident, the results of the investigation by the University Police, text messages sent to and from Jane Doe #1 and Jane Doe #2, and the results of the rape kit analysis.  (*Id.* at PageID 116–19.)  Peloe alleges upon information and belief that Cummins orchestrated the actions of the ARC panel.  (*Id.* at PageID 119.)

The ARC panel determined that Peloe violated the Code of Conduct concerning the sections on physical abuse or harm and harassment. (Doc. 28-1 at PageID 470.) Peloe participated during the hearing concerning the charges of one student, but he left before the hearing concerning the second student began because he believed he was being denied due process. (*Id.;* Doc. 3 at PageID 119.) Both parties agree in their briefs that the ARC panel recommended that Peloe be dismissed from UC, but Peloe did not make that specific factual allegation in his Amended Complaint.

**C.      Judicial Proceedings**

Peloe initiated this suit against the University and Cummins only in the Hamilton County, Ohio Court of Common Pleas on May 5, 2014 as Case No. A1402629. He sought declaratory relief, damages, and an injunction prohibiting further disciplinary proceedings in a manner that violates the Constitution. (Doc. 2 at 9–24.) Peloe moved for a temporary restraining order ("TRO") against UC and Cummins. (Doc. 1-5.) Judge Jerome Metz, Jr. of the Common Pleas Court issued an Entry Granting Motion for TRO on May 7, 2014. (Doc. 1-15.) Judge Metz enjoined the University from "continuing disciplinary actions or imposing further disciplinary sanctions" against Peloe. (*Id.* at PageID 76.) The TRO was to remain in effect until May 29, 2014 pursuant to the terms of the Entry. (*Id.* at PageID 77.)

Peloe filed an Amended Complaint on May 15, 2014. (Doc. 3.) Peloe asserts three claims for relief against UC and Cummins in the Amended Complaint: (1) declaratory judgment—violations of the procedural due process provisions of the United States Constitution and the Ohio Constitution; (2) damages for violations of civil rights pursuant to 42 U.S.C. § 1983; and (3) injunctive relief. (*Id.*)

In his Amended Complaint, Peloe sues Cummins in his official capacity for declaratory and injunctive relief and in his individual capacity for damages.  (*Id.* at PageID 109.)  "Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the governmental entity."  *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999) (citing *Ky. v. Graham,* 473 U.S. 159, 166 (1985)).  Accordingly, the analysis of the claims against the University subsumes the analysis of the claims against Cummins in his official capacity.

On May 15, 2014, Defendants removed the case to the District Court for the Southern District of Ohio.  (Doc. 1.)  On June 2, 2014, this Court issued an Order extending the TRO until July 29, 2014 with the consent of the University.  (Doc. 5.)  Defendants filed the pending Motion to Dismiss on June 16, 2014.  (Doc. 9.)  On July 17, 2014, the Court extended the TRO again "until the Court either grants the [M]otion to [D]ismiss filed by the University of Cincinnati or issues a decision on the Motion for Preliminary Injunction."  (Doc. 12 at PageID 192.)

Peloe opposes Defendants' Motion to Dismiss.  Peloe attached the Affidavit of Paul Moke in support of his written Opposition to Motion to Dismiss.  (Docs. 13, 13-1.)  Peloe also filed a Motion for Leave to File a Second Amended Complaint on July 25, 2014.  (Doc. 16.)  Peloe seeks to reassert the claims for (1) declaratory judgment—violations of the due process provisions of the United States and Ohio Constitutions, (2) damages for violations of civil rights pursuant to 42 U.S.C. § 1983, and (3) injunctive relief.  (Doc. 16-1 at PageID 387–390, 392–93.)  He seeks to add a claim against UC for violation of Title IX, 20 U.S.C. § 1681.  (Doc. 16-1 at PageID 390–92.)  Defendants oppose the filing of a Second Amended Complaint.  Defendants also move to strike the Affidavit of Moke.  (Doc. 27.)  Finally, Peloe seeks leave to file a supplemental memorandum opposing Defendants' Motion to Dismiss.  (Doc. 46.)

## II.     STANDARDS FOR ADJUDICATING RULE 12(B)(6) MOTIONS AND MOTIONS FOR LEAVE TO AMEND

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A district court "must read all well-pleaded allegations of the complaint as true."  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).  However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations, which are not entitled to an assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory."  *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation and citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims

contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation and citation omitted).

Finally, a district court "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may deny leave to amend where it appears that doing so would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Jet, Inc. v. Sewage Aeration Syss.*, 165 F.3d 419, 425 (6th Cir. 1999).

## III.    ANALYSIS

### A.    Analysis of Procedural Due Process Claim Against the University of Cincinnati

#### 1.    Due Process Claims Generally

Peloe asserts materially similar due process claims against UC both in the Amended Complaint and in the proposed Second Amended Complaint. Peloe asserts a claim for violation of his procedural due process rights pursuant to 42 U.S.C. § 1983. To establish this claim against Defendants, Peloe must plead facts sufficient to establish the following elements:

> (1) that [he has] a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that [he was] deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford [him] adequate procedural rights prior to depriving them of [his] protected interest.

*Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Defendants move to dismiss the procedural due process claims on the grounds that no due process violation has occurred because Peloe terminated the disciplinary proceedings prematurely. Although Defendants do not use this terminology relative to the due process claims, the Court understands Defendants to be making the argument akin to a ripeness argument. The ripeness doctrine "is drawn both from Article III limitations on judicial power

and from prudential reasons for refusing to exercise jurisdiction." *Warshak v. U.S.*, 532 F.3d 521, 525 (6th Cir. 2008) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003)). Courts examine three factors to determine ripeness: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (citation omitted). A claim is not ripe if it involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (citation omitted).

An examination of the nature of a § 1983 procedural due process claim is necessary to understand the ripeness argument. A plaintiff ordinarily is entitled to bring § 1983 actions to remedy violations of federal civil rights even where the state seeks to provide its own administrative remedy for the alleged violation. *Zinermon v. Burch*, 494 U.S. 113, 124 (1990) (internal quotation and citation omitted). "[O]verlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983." *Id.* In § 1983 actions for violations of procedural due process, however, "the existence of state remedies *is* relevant in a special sense." *Id.* at 125 (emphasis in the original). "The constitutional violation actionable under § 1983 is not complete when the deprivation [of a life, liberty, or property interest] occurs; it is not complete unless and until the State fails to provide due process." *Id.* at 126. A court must examine the procedural safeguards built into the statutory or administrative procedure and the remedies provided by statute or tort law in order to determine whether a constitutional procedural due process violation has occurred. *Id.*

9

Applying *Zinermon*, Defendants argue that Peloe has not suffered a procedural due process violation here.  Peloe filed suit immediately after the ARC hearing.  The University has not sought to impose a final sanction upon Peloe.  The Code of Conduct provided for at least one additional and up to three additional steps of disciplinary proceedings before a sanction would be imposed.  The ARC panel's initial recommendation has not been reviewed by the dean of students.  Peloe has not appealed to the university appeals administrator and to the vice president of student affairs and services.  The "availability of additional remedies indicates that his procedural due process claims are still premature."  *Minix v. Frazier*, 4 F. App'x 230, 231 (6th Cir. 2001).

Defendants cite the following Sixth Circuit analysis of a public employee's due process claim in support of their argument:

> The law is well-established that it is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process.  As long as the procedural requirements are reasonable and give the employee notice and an opportunity to participate meaningfully, they are constitutionally adequate.  *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998).  As succinctly stated by the Seventh Circuit, the "availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure."  *Dusanek v. Hannon*, 677 F.2d 538, 542–43 (7th Cir.) (citations omitted), *cert. denied sub nom Dusanek v. O'Donnell,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982).  Consequently, where the employee refuses to participate or chooses not to participate in the post-termination proceedings, then the employee has waived his procedural due process claim.  *See Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 904 (8th Cir. 2000) (citations omitted).

*Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004) (arising in context of a public employee's disciplinary proceeding).  The Sixth Circuit held that the public-employee plaintiff in *Farhat* had waived his right to post-deprivation due process by failing to fully pursue arbitral proceedings.  *Id.* at 597.

Of course, UC's disciplinary proceedings are different than the pre- and post-termination hearings available to the public employee in *Farhat*. Nonetheless, other circuit courts concur with the *Farhat* analysis that a plaintiff cannot bring a claim for a due process violation when he has not availed himself of due process protections. *See e.g.*, *Ashley v. N.L.R.B.*, 255 F. App'x 707, 709–10 (4th Cir. 2007) ("[A] plaintiff may not bypass a seemingly adequate administrative process and then complain of that process's constitutional inadequacy in federal court."); *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."); *Dusanek v. Hannon*, 677 F.2d 538, 542–43 (7th Cir. 1982) ("The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure."); *Hardman v. Johnson Cmty. Coll.*, No. 13-2535-JTM, 2014 WL 1400668, at *3 (D. Kan. Apr. 10, 2014) (stating that a party cannot create a due process claim by short-circuiting established procedures).

Peloe comes at this issue from a different angle. He asserts that the issue is whether a plaintiff must exhaust state administrative remedies before bringing a § 1983 claim for violation of due process rights. The Supreme Court held in *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982), that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Id.* at 516. Peloe miscasts the issue, however, and fails to account for the factual differences between *Patsy* and this case. The plaintiff in *Patsy* alleged race and sex discrimination, not a violation of procedural due process rights. *Id.* at 498. The dispositive due process issue in this case is not whether exhaustion is required. The issue is when or whether a constitutional violation of procedural due process

rights has occurred. *See, e.g., Alvin*, 227 F.3d at 116 (distinguishing a requirement that suit not be filed until after a due process violation has occurred from an exhaustion requirement); *Dusanek*, 677 F.2d at 543 (distinguishing an exhaustion of remedies requirement from the "logical proposition that a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them"); *Hardman*, 2014 WL 1400668, at *4 (stating that the issue was not whether the action was barred for a lack of exhaustion, but whether the school offered an adequate process which was abandoned by the plaintiff). *Zinermon* teaches that a procedural due process claim does not exist until UC fails to provide the due process. 494 U.S. at 126. Peloe filed this suit after the first step of a multi-step procedure, denying UC the opportunity to provide him procedural due process.

Peloe contends, nonetheless, that the holding in *Patsy* has been applied in due process cases. For example, a court held that a prisoner could bring a procedural due process claim concerning a disciplinary hearing without first appealing the administrative decision. *Camps v. Lyons*, No. 89-3343, 1990 WL 40881, at *1 (E.D. Pa. Apr. 4, 1990). The court rejected the defendants' argument that a "plaintiff cannot claim a due process violation when the state has in place an appeals procedure which, if utilized, might have corrected the alleged procedural infirmity" based on the *Patsy* holding that "plaintiffs need not exhaust administrative procedures to initiate a §1983 action." *Id.* This Court has not found any cases which analyze or even cite the unpublished *Camps* decision. The Court does not find the *Camps* decision to be persuasive and will not follow it.

Peloe also relies on *Yoder v. University of Louisville*, No. 3:09-cv-205-S, 2009 WL 2406235 (W.D. Ky. Aug. 3, 2009), *vacated on other grounds*, 417 F. App'x 529 (6th Cir. 2011).

The plaintiff in *Yoder* sued the university after she was expelled for breaching the university's written honor code and confidentiality agreement through her blog postings. *Id.* at *4. She sued the university alleging that her expulsion had violated her right to free speech and her right to procedural due process. *Id.* at *4. The university argued that the plaintiff's claims were barred because she had not exhausted her remedies by filing a grievance with the university. *Id.* at *4–5. The court disagreed stating that "exhaustion in not a prerequisite to maintenance of an action under § 1983." *Id.* at *5. However, the court avoided adjudicating the merits of the constitutional issues by holding that the plaintiff was wrongfully dismissed from the university because she had not breached the honor code or the confidentiality agreement. *Id.* at *6–7. The court's comment about exhaustion of due process was dicta.

The *Yoder* case also is factually distinguishable in material respect from what has transpired for Peloe. UC has not sought to impose a disciplinary sanction upon Peloe to date. The ARC panel's decision was only a recommendation. The recommendation had to be approved by the dean of students, and Peloe had the right to appeal the decision of the dean of students. Peloe short-circuited the disciplinary process by obtaining a temporary restraining order in state court. By contrast, Yoder's termination appears to have taken effect after she filed an administrative review, which was denied, and prior to the date she initiated her civil rights action against the University of Louisville. *Yoder*, 2009 WL 2406235, at *4.

*Nasierowski Brothers Investment Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), likewise, is factually distinguishable. Nasierowski had purchased property for development in reliance upon the city's favorable zoning opinion. *Id.* at 897. He was denied due process when the city council amended the zoning classification of the property in an executive session without affording Nasierowski notice or a hearing. *Id.* at 896–97. The district court held

that Nasierowski's constitutional claim was not ripe because he did not seek a variance from the zoning appeals board as he was entitled to do under state law. *Id.* at 893. The Sixth Circuit disagreed and stated that the procedural due process claim was ripe because "the Council's passage of the new zoning ordinance . . . was an act that *in and of itself* inflicted immediate injury on Nasierowski." *Id.* at 894–95 (emphasis in the original). The Sixth Circuit held that Nasierowski was not required to pursue the separate administrative procedure of a zoning variance before he could pursue his due process injury. Peloe's case is different. To begin, this is not a land use case. Also, under the facts alleged, Peloe has not yet suffered a constitutional injury. *See Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 160 (6th Cir. 1992) ("*Nasierowski* appears to stand merely for the sensible proposition that while different circumstances may produce different results, the final decision rule does not apply when the denial of procedural due process itself creates an injury.") The disciplinary proceedings are not complete and no disciplinary penalty has been imposed upon Peloe. As such, any procedural due process claim is not ripe.

### 2. Futility of the Disciplinary Appeals Process, Extrinsic Evidence, and the Motion to File Supplemental Memorandum

Peloe also asserts that he should not be required to complete the disciplinary proceedings at UC because the proceedings are not constitutionally sufficient. In other words, Peloe argues that completing the disciplinary process would be futile. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, *unless those processes are unavailable or patently inadequate*." *Alvin*, 227 F.3d at 116 (emphasis added). Peloe pleads that the University did not provide him with a "constitutionally sufficient" procedure, but those legal conclusions couched as factual assertions need not be accepted as true on a dismissal motion. *See Iqbal*, 556 U.S. at 678.

Peloe asserts that he would not have been able to raise his due process arguments during the disciplinary process, but that suggestion amounts to no more than groundless speculation. The Conduct of Conduct permits an accused student to appeal "[a] substantial procedural error" to the university appeals administrator.  (Doc. 9-1 at PageID 183.)  Peloe also argues that the process was not constitutionally sufficient because he would not receive a *de novo* or full evidentiary hearing upon the appeal.  This argument fails.  At both the second and third stage of the disciplinary process, the dean of students or the university appeals administrator, respectively, can remand to the matter to the ARC panel for further consideration.  The appeals administrator can specifically instruct the ARC panel to hold a limited hearing to consider either new information not available at the time of the initial hearing or to correct any procedural error that occurred at the initial hearing.  (*Id.* at PageID 177, 183–84.)

Relatedly, Peloe asserts that completing the disciplinary process, which he wrongfully mischaracterizes as exhaustion of administrative remedies, would be futile because the University officers were biased against him.  Peloe submits extrinsic evidence at CM/ECF Documents #14 and #46-2 to support this argument.  A dismissal motion ordinarily must be decided without consideration of matters outside the pleadings.  *Rondigo*, 641 F.3d at 680.  A district court can convert a dismissal motion to a summary judgment motion in order to consider extrinsic evidence, but both parties must be given the opportunity to present evidence.  *See* Fed. R. Civ. P 12(d).  Neither party has moved to convert the pending Motion to Dismiss to a summary judgment motion.  However, the evidence filed as Document #14 was referenced in and central to the allegations contained in the later-filed proposed Second Amended Complaint. (*Compare, e.g.*, Doc. 14 at PageID 338 *with* Doc. 16-1 at PageID 373.)  It would promote form over substance to not consider the evidence as if it were attached to the proposed Second

Amended Complaint.  In any event, the evidence filed as Document #14 is insufficient to save Peloe's claims from dismissal as explained herafter.  The Court will discuss the evidence filed at Document #46-2 separately below.

### a.   Bias of Defendant Cummins, Kenya Faulkner, Carol Tonge Mack, and Debra Merchant

Peloe argues that his extrinsic evidence establishes bias against him by Defendant Cummins, Kenya Faulkner, the University's general counsel, and Carol Tonge Mack, a dean at the University.  Peloe alleges that Cummins orchestrated the ARC panel hearing and Tonge Mack participated as a member of the ARC panel.  The allegations of bias against Cummins and Tonge Mack amount to a claim of substantial procedural error during the first stage of the disciplinary proceedings. For example, the report prepared by Cummins prior the ARC hearing included statements made by Jane Doe #1 and Jane Doe #2, but did not include information provided by email to Cummins from a student who supported Peloe's version of events.  (Doc. 14 at PageID 271–83; Doc. 9-1 at PageID 183.)  Tonge Mack was copied on emails to and from Cummins regarding Jane Doe #1's and Jane Doe #2's requests for academic accommodations following the alleged sexual assault.  (Doc. 14 at PageID 334–36.)  The emails can be fairly read to credit the students' allegations that they were raped.  Peloe asserts that Tonge Mack should not have participated on the ARC panel after receiving such emails.  (Doc. 16-1 at PageID 379.)

Turning to Faulkner, Peloe presents evidence suggesting that Jeff Corcoran, the UC Chief of Police, was concerned that Faulkner, acting as general counsel, interfered in the police department's investigation of the charges.  Faulkner forwarded to the Chief Corcoran and to Cummins, among others, an email she received from Jane Doe #2's mother complaining about how the UC police officers had treated her daughter during the rape investigation.  (Doc. 14 at PageID 337.)  Peloe alleges in the proposed Second Amended Complaint that Faulkner interfered

16

with, or attempted to influence, the criminal investigation by the UC police.  (Doc. 16-1 at PageID 373.)  However, Peloe does not allege that Faulkner participated during his misconduct hearing before the ARC panel.  Nor does Peloe identify any way in which Faulkner would participate in or influence the latter three stages of the UC's disciplinary proceedings against Peloe.

These allegations of bias and procedural errors are troubling, but the merits of whether Peloe received due process in the early stages of the UC disciplinary proceedings are not before the Court at this time.  The allegations, moreover, do not establish futility in the appeals process. Pursuant to the Code of Conduct, Peloe had the right to appeal the decision of the dean of students on the basis of "substantial procedural error[s] . . . which affected the decision in the case."  (Doc. 9-1 at PageID 183.)  The university appeal administrator could have ordered a re-hearing before the ARC panel to cure the alleged errors.  (*Id.* at PageID 183–84.)  Of note, the Code of Conduct provides a procedure for substituting members of the ARC panel on remand if members of the original panel are not available.  (*Id.* at PageID 184.)  For these reasons, the Court finds that the extrinsic evidence concerning the purported bias of Cummins, Faulkner, or Tonge Mack does not save Peloe's due process claims.

Peloe also submits two exhibits which purportedly show bias on the part of Debra Merchant, the University's vice president for student affairs and services.  She is the person with final authority to accept, reject, or modify the sanction recommended to be imposed against a student accused of nonacademic misconduct.  (Doc. 9-1 at PageID 185.)  Merchant received two emails concerning the allegations against Peloe.  The first email was from Jane Doe #2's mother to Faulkner complaining about the investigation of the alleged rape undertaken by the University police.  (Doc. 14 at PageID 337.)  The second was from Faulkner to multiple University officials

concerning a conversation she had with Jane Does #2's mother about the timing of Peloe's disciplinary hearing and her daughter's academic progress. (*Id.* at PageID 338.)

The emails can be read together as evincing Faulkner's and the mother's concern for Jane Doe #2 as a victim. The emails do not, however, suggest that Merchant viewed Jane Doe #2 as a victim or pre-judged the allegations against Peloe. Peloe cites no case law holding that a potential decisionmaker should be disqualified because she was aware of the allegations against an accused person prior to the disciplinary proceedings. Rather, "[i]n the university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias." *McMillan v. Hunt*, No. 91-3843, 1992 WL 168827, at *2 (6th Cir. July 21, 1992); *see also Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 256 (6th Cir. 2005) (quoting *McMillan*); *Gorman v. Univ. of Rhode Isl.*, 837 F.2d 7, 15 (1st Cir. 1988) (stating that prior contact between students and participants in a disciplinary proceeding is likely and does not *per se* indicate bias). Peloe's extrinsic evidence is not sufficient at this stage in the litigation to establish that Merchant would be biased against Peloe.

### b. Affidavit of Paul Moke

Next, Peloe submits the Affidavit of Paul Moke for his expert opinion. (Doc. 13-1.) Defendants have moved to strike Moke's Affidavit. Generally, an affidavit produced by an expert witness must comport with the timing and substantive requirements of an expert report. *See Powell Mountain Energy, LLC v. Manalapan Land Co., Ltd.*, No. 09-cv-305-JBC, 2012 WL 2119279, at *2 (E.D. Ky. June 11, 2012). The Federal Rules of Civil Procedure provide that an expert report must include the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;

> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). If a party fails to provide information required by Rule 26(a), such as an expert report, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 905, 909 (N.D. Ohio 2008) ("When an expert report does not provide the required disclosures under Rule 26(a)(2)(B), the sanction of exclusion is *automatic and mandatory* unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.") (quotations and citations omitted).

Moke's Affidavit does not meet the requirements of an expert report pursuant to Rule 26(a)(2)(B). Moke offers a statement of his opinions and he identifies the documents he considered to form his opinion consistent with the requirements of subsections (i) and (ii). However, Moke does not state whether he authored any publications during the past ten years as required by subsection (iv), and if he has, the name of the publications he has authored. He does not state whether he has testified as an expert witness during the past four years as required by subsection (v), and if he has, in what cases he has testified as an expert witness. Finally, Moke does not disclose whether he was compensated for providing his affidavit as required by subsection (vi). Defendants' ability to impeach or challenge Moke's testimony is hampered without such information. Also, Defendants would be prejudiced by the admission of Moke's Affidavit because they have not deposed Moke nor had an opportunity to offer their own expert in rebuttal. *Cf. Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 636–37 (6th Cir.

2007) (affirming district court's exclusion of an untimely submitted expert witness affidavit because the opposing party was denied an opportunity to depose the witness).  Accordingly, the Court will strike the Affidavit of Paul Moke.

### c. Supplemental Memorandum Evidence

In his Motion to File a Supplemental Memorandum in Opposition (Doc. 46), Peloe seeks to submit additional extrinsic evidence on the issue of futility.  The evidence consists of materials produced in a separate litigation against the University of Cincinnati, *Doe I et al. v. University of Cincinnati*, No. 1406907 (Hamilton County C.P., Ohio).  (Doc. 46-2.)  The Court finds that this evidence is untimely submitted and irrelevant to a determination of the pending motions in this case.  The Court will deny the Motion to File a Supplemental Memorandum and consequently will exclude the purported evidence.

### d. Conclusion on the Procedural Due Process Claim Against UC and Cummins in His Official Capacity

The Court concludes that Peloe filed this claim prematurely and that Peloe has failed to establish the futility of continuing with UC's disciplinary process.  This conclusion is the same whether the Court considers the four corners of the Amended Complaint only, the extrinsic evidence, and/or the allegations in the proposed Second Amended Complaint.  The Court is required by *Zinernon* to examine the procedural safeguards built into the University's nonacademic misconduct disciplinary proceedings to determine whether Peloe's procedural due process rights have been violated.  *See* 494 F.3d at 126.  Peloe sued the University and Cummins immediately after the first step of a multi-step procedure.  He filed suit before higher level University officials had an opportunity to review the ARC panel proceedings for error and before the University sought to impose any final sanction.  The Code of Conduct process appears to provide the means by which the University could remedy the due process procedural errors about

which Peloe complains.  The "availability of additional remedies indicates that [Peloe's] procedural due process claims are still premature."  *Minix*, 4 F. App'x at 231; *see also Zinermon*, 494 F.3d at 126 (stating that constitutional violation is not actionable unless and until the state actor fails to provide due process).

The Court will dismiss as premature the procedural due process claim against the University and Cummins in his official capacity without prejudice to re-filing.  Additionally, the Court will deny the Motion for Leave to Amend to the extent Peloe seeks to re-assert the due process claims.

**B.**    **Analysis of Procedural Due Process Claim Against Defendant Cummins in his Individual Capacity**

Defendants assert that the procedural due process claims against Defendant Cummins in his individual capacity fail because Defendant Cummins is entitled to qualified immunity.  The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity provides immunity from suit, not simply a defense to liability.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Courts determine if qualified immunity applies by (1) examining whether the facts alleged would establish that the government official's conduct violated a constitutional right and (2) examining whether the specific right violated was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001).  The inquiry into whether the constitutional right was clearly violated "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* at 201.  Courts can examine either issue first.  *Pearson*, 555 U.S. at 236.

The Court already has determined that Peloe cannot at this juncture establish that the University violated his procedural due process rights. For the same reasons, Peloe cannot establish on the facts alleged that Cummins violated his procedural due process rights. Cummins is entitled to qualified immunity from suit because his alleged conduct did not violate Peloe's constitutional rights. *See Pearson*, 555 U.S. at 232.

**C.    Analysis of the IX Claim in the Proposed Second Amended Complaint**

Peloe seeks leave to file a proposed Second Amended Complaint adding a claim against the University for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.[1] Defendants argue that leave to amend should be denied on the grounds of futility.

Title IX provides generally that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Peloe would allege in the proposed Title IX claim that the University "committed impermissible gender bias against Peloe in the investigation and adjudication of [Jane Doe #1's] and [Jane Doe #2's] accusations . . . because Peloe was a male accused of sexual assault." (Doc. 16-1 at PageID 390.) Peloe seeks to proceed under two theories of relief recognized for Title IX claims: (1) that the "decision of the ARC Hearing Panel was an erroneous outcome which was the direct result of a flawed proceeding[;]" and (2) that "Defendants were deliberately indifferent to the gender bias against Peloe." *Id.* In a typical erroneous outcome case, the plaintiff "attack[s the] university disciplinary proceeding on grounds of gender bias" by arguing that the plaintiff "was innocent and wrongly found to have committed an offense." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). In the typical

---

[1] Peloe concedes that a Title IX claim cannot be asserted against Cummins in his individual capacity. (Doc. 31 at PageID 540.)

deliberate indifference case, "a plaintiff seeks to hold an institution liable for sexual harassment and . . . [is required to] demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003).

      Defendants argue that Peloe should not be given leave to add the Title IX claim because the claim is not ripe.[2]  The Court agrees with Defendants.  Peloe has asserted that gender bias caused procedural errors and an erroneous outcome in the first step of a multi-step disciplinary process.  He also alleges deliberate indifference on the basis that a person at UC with knowledge of misconduct in the disciplinary proceedings failed to correct the misconduct because Peloe was male.  Peloe filed this suit after the ARC panel issued its non-binding recommendation.  Peloe did not continue with steps two, three, or four of the disciplinary process.  The Court cannot fairly determine at this stage whether gender bias caused an erroneous outcome because Peloe cut off the process before UC made an enforceable decision.  The Court cannot determine whether a person with knowledge of UC's alleged misconduct failed to correct the misconduct because the dean of students, the appeals administrator, and the vice president for student affairs were denied the opportunity to correct any mistakes.  In sum, the Title IX claim is not ripe because it involves contingent events that might not occur as Peloe anticipates.

      The University cites *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009), for the proposition that Title IX does not have an administrative exhaustion requirement, but that case does not change the Court's analysis.  The Supreme Court in *Fitzgerald* held that a plaintiff was

---

[2]  The University also argues that the proposed deliberate indifference claim fails to state a claim upon which relief can be granted.  There is a split within the Sixth Circuit whether a plaintiff must allege that he or she was subjected to sexual harassment in order to state a claim for deliberate indifference under Title IX.  *Compare Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 757–58 (E.D. Tenn. 2009) (calling sexual harassment a "critical component" of deliberate indifference) *with Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 751–52 & n.2 (S.D. Ohio 2014) (recognizing a deliberate indifference claim absent an allegation of sexual harassment).  The Court need not delineate the contours of a Title IX claim.

not foreclosed by Title IX from bringing sex discrimination claims both under Title IX and under the Equal Protection Clause pursuant to 42 U.S.C. § 1983. *Id.* at 258. The Supreme Court observed that Title IX does not require administrative exhaustion to distinguish Title IX from statutes such as the Education of the Handicapped Act ("EHA") and the Telecommunications Act of 1996 ("TCA") which had "highly detailed and restrictive administrative and judicial remedies." *Id.* at 253–54. The Supreme Court held that the EHA and TCA provided exclusive remedies which could not be supplemented by parallel § 1983 causes of action. *Id.*

The *Fitzgerald* case is not relevant to a determination of when a Title IX claim is ripe. The Court is not imposing an administrative exhaustion requirement on Peloe. The Court has concluded merely that Peloe's claim that the University reached an erroneous outcome or acted with deliberate indifference by failing to correct misconduct is premature because the University has not made an enforceable final decision as to the sexual misconduct charges against Peloe. Under the University's Code of Conduct, a penalty would not be imposed for sexual misconduct until an ARC panel recommendation to impose a sanction was both adopted by the dean of students and not appealed by the accused student. (Doc. 9-1 at PageID 177.)

In sum, the Court concludes that the proposed Title IX claim is not ripe. The Court will deny Plaintiff Peloe's Motion for Leave to File Second Amended Complaint insofar as Peloe seeks leave to add a Title IX claim.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 9) is **GRANTED**, Defendants' Motion to Strike the Affidavit of Paul Moke (Doc. 27) is **GRANTED**, Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 16) is **DENIED**, and Plaintiff's Motion for Leave to File Supplemental Memorandum in Opposition to Motion to Dismiss (Doc. 46) is **DENIED**.  The Court dismisses Plaintiff's claims without prejudice.

IT IS SO ORDERED.


S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court